116 F.3d 484
 1997 Copr.L.Dec. P 27,669
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
LUMIERE (RIGHTS) LIMITED, a corporation, Plaintiff-Appellee,
Cross-Appellant,
v.
BAKER & TAYLOR, INC., a corporation; Hollywood
Entertainment Corporation, a corporation dba Hollywood
Video; Jim Patterson, dba Video Gold; Mark J. Thomas, dba
Video Gold, Defendants-Appellant, Cross-Appellees.
 Nos. 95-36192, 95-36220.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 5, 1997.
 Decided June 4, 1997.
As Corrected June 24, 1997.
 
 1
 Appeal from the United States District Court for the District of Oregon, No. CV-93-00914-ALJ; Ancer L. Hagerty, District Judge, Presiding.
 
 
 2
 Before: FLETCHER and TASHIMA, Circuit Judges and SCHWARZER,** District Judge.
 
 
 3
 MEMORANDUM*
 
 
 4
 Hollywood Entertainment Corporation ("Hollywood"), and Jim Patterson and Mark J. Thomas, dba Video Gold ("Video Gold") appeal the grant of summary judgment to appellee Lumiere (Rights) Ltd. ("Lumiere") on its claim that appellants infringed its copyright interest in the television series, The Avengers, by offering for rent, sale, and display unauthorized The Avengers videotapes.[1] On appeal, appellants claim that Lumiere's claim is barred by the statute of limitations; that a genuine issue of material fact exists as to whether Lumiere has title to The Avengers' copyright; and that the district court abused its discretion in awarding plaintiff an attorney's fee of $60,000. Lumiere cross-appeals, claiming that the district court abused its discretion in awarding Lumiere $60,000 without making specific findings as to the hours and rates that it determined to be reasonable. We have jurisdiction, 28 U.S.C. § 1291. We affirm the grant of summary judgment and the award of attorney's fees. We grant Lumiere's request for costs and fees on appeal.
 
 I. DISCUSSION
 
 5
 We review a trial court's grant of summary judgment de novo to determine whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995). We review whether the trial court applied the proper statute of limitations, a question of law, de novo. Washington v. Garrett, 10 F.3d 1421, 1428 (9th Cir.1993). The decision to award attorney's fees, and the amount of the fees awarded, are both reviewed for an abuse of discretion. Frank Music Corp. v. Metro-Goldwyn-Mayer Inc., 886 F.2d 1545, 1556 (9th Cir.1989). The supporting findings of fact are reviewed for clear error. Price v. Seydel, 961 F.2d 1470, 1475 (9th Cir.1992).
 
 A. Statute of Limitations
 
 6
 The infringements occurred on March 11, 1993, and suit was filed on July 27, 1993, within three years of the infringements as required by 17 U.S.C. § 507(b).
 
 
 7
 Appellants are incorrect in asserting that Lumiere's infringement claim is barred because its predecessor in interest, Weintraub Entertainment, allegedly knew that a manufacturer was producing and selling unauthorized The Avengers videotapes in the spring of 1988. That manufacturer is not a party to this lawsuit. As the district court properly stated:
 
 
 8
 Whether other parties were distributing unauthorized copies of Avengers episodes in 1988 or at any other date more than three years before plaintiff's complaint was filed is irrelevant. Plaintiff's complaint alleges that defendants, not any other parties, are guilty of infringing on plaintiff's exclusive rights. The fact that other parties may have infringed on those same rights in the past does not trigger the statute of limitations with regard to defendants.
 
 
 9
 Lumiere (Rights) Ltd. v. Baker & Taylor, No. 93-914-HA, slip op. at 6-7 (D.Or. Mar. 31, 1995). Section 501 of the Copyright Act, 17 U.S.C. § 501, provides that "[a]nyone who violates any of the exclusive rights of the copyright owner ... is an infringer of the copyright...." The district court properly separated the 1988 and the 1993 claims for analysis.
 
 
 10
 In a case of continuing copyright infringements, like this one, an action may be brought for all acts that accrued within the three years preceding the filing of the suit. Roley v. New World Pictures, Ltd., 19 F.3d 479, 481 (9th Cir.1994). Failure to sue within three years of the first act of continuing infringement does not produce a waiver or bar as to subsequent acts of infringement as appellants argue.
 
 B. Proof of Title
 
 11
 In order to prevail on its summary judgment claim, Lumiere must prove its ownership of the copyrights and the violation of one or more of its exclusive rights. S.O.S., Inc. v. Payday, Inc., 886 F.2d 1081, 1085 (9th Cir.1989). Appellants admit that they have displayed, rented, and sold videocassette copies of the episodes at issue. Thus, the only issue in dispute is whether or not Lumiere established its title. We agree with the district court that it did.
 
 
 12
 A certificate of registration creates a prima facie presumption of validity only if it was issued within five years of the first publication of the work; where, as here, registration occurred later, the evidentiary weight to be accorded the certificate is within the discretion of the court. 17 U.S.C. § 410(c). An assignee of a previously registered statutory copyright, like Lumiere, bears the burden of proving its chain of title because nothing in the registration certificate itself establishes its right to claim through the original copyright claimant. See 3 Melville Nimmer & David Nimmer, Nimmer on Copyright § 12.11[C] (1996).
 
 
 13
 Appellants claim that a 1988 letter, offered as an Exhibit to their Response to Plaintiff's Motion for Summary Judgment, raised a genuine issue of material fact concerning Lumiere's claim to title of the copyright in the videotaped episodes.[2] The letter, written to Weintraub, Lumiere's predecessor in interest, is from a London solicitor, who concludes that he has reviewed no documents that support the transfer of rights for the Third and Fourth series from ABC TV Films Ltd. to EMI Film Distributors or to any other parties.
 
 
 14
 Unauthenticated documents cannot be considered on a motion for summary judgment. Hal Roach Studios, Inc. v. Richard Feiner and Co., 896 F.2d 1542, 1550 (9th Cir.1990) (citing Canada v. Blain's Helicopters, Inc., 831 F.2d 920, 925 (9th Cir.1987)). "To be considered by the court, 'documents must be authenticated by and attached to an affidavit that meets the requirements of [Rule] 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence.' " Id. at 1550-51 (quoting Canada, 831 F.2d at 925). A document which lacks a proper foundation to authenticate it cannot be used to defeat a motion for summary judgment. Canada, 831 F.2d at 925 (9th Cir.1987).
 
 
 15
 The 1988 Solicitor's Letter was unaccompanied by either an affidavit or deposition; no proper foundation was laid for its admission into evidence. As such, it was inadmissible.[3]
 
 
 16
 Further, even if we were to consider the letter, it fails to raise genuine issues of material fact as to Lumiere's ownership of the copyrights since the affidavits submitted by Lumiere adequately establish the chain of title. The letter stated only that the solicitor had seen no document of transfer, not that none existed. Pursuant to Fed.R.Evid. 1006, appellants submitted chain of title summary, and copies of pertinent documents, including an assignment of rights from Lumiere Pictures Limited to Lumiere (Rights) Limited. Each step in the transfer is documented and described in the affidavit of Frank Leach, the Company Secretary of Lumiere, who had personal knowledge of the transfers as an employee, officer, or director of the entities in the chain of title at the relevant times.
 
 
 17
 Lumiere filled in the alleged "gap" in title between ABC TV Films Ltd. and EMI Film Distributors referred to in the 1988 letter. Specifically, it provided proof that in 1970 ABC TV Films Ltd. changed its name to EMI Television Films Limited. It then provided evidence that in 1973 EMI Television Films Limited transferred the rights to The Avengers series to Anglo-EMI Film Distributors Limited, which then changed its name to EMI Film Distributors. The chain of title from EMI Film Distributors to Lumiere is uncontested.
 
 
 18
 Appellants counter that the 1973 transfer document between EMI Television Films Limited and Anglo-EMI Film Distributors Limited makes no specific assignment or transfer of The Avengers copyrights or ownership. However, § 204 of the Copyright Act requires only that transfer documents be in writing and signed by the owner or agent. There is no requirement that the writing reference the copyrights in any particular way. See Effects Assoc., Inc. v. Cohen, 908 F.2d 555, 557 (9th Cir.1990) (a transfer document can be simple; a one-line statement will do). The 1973 document grants the transferee "the benefit of all current contracts licences agreements and engagements of the Transferrors in relation to such businesses and all other properties assets and chooses in action owned by the Transferrors on the transfer date." Appellants provided no evidence to show that this transfer did not include the copyrights at issue. Cf. Rohauer v. Friedman, 306 F.2d 933, 936 (9th Cir.1962) (finding that a transfer implicitly included renewal rights because the language stated that all right, title and interest were to be transferred; because no evidence in the record supported a conclusion that the transferor intended to retain any rights in the copyright at issue; and because the transferor was dissolved shortly after the transfer).
 
 
 19
 To defeat a motion for summary judgment appellants must raise genuine issues of triable fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). As the district court stated, "[appellants] claim that the mere possibility that an agreement exists clouds plaintiff's title." Like the district court, we disagree. The district court did not err in determining that Lumiere established its ownership of good title. Summary judgment was properly granted.
 
 C. Attorney's Fees
 
 20
 Both parties appeal from the district court's award of attorney's fees to Lumiere. Appellants argue that Lumiere is not entitled to a fee at all, and even if it is, the fee awarded was too high. Lumiere argues that the district court awarded it too small a fee.
 
 
 21
 Appellees sought attorney's fees of $130,048.75 and costs of $13,926.18. The court reviewed the materials submitted and awarded full costs but only $60,000 as fees. The district court properly considered the degree of success obtained by the prevailing party, the frivolousness of the action, the motivation of the parties, the objective reasonableness of the legal and factual arguments in the case, and the need in particular circumstances to advance considerations of compensation and deterrence. See Fogerty v. Fantasy, Inc., 510 U.S. 517, 535 n. 19 (1994).
 
 
 22
 The district court specifically found that Lumiere's lawyers' hourly rates were reasonable and that their time records formed an adequate evidentiary basis from which to assess the fee petition. However, the court found that Lumiere sought reimbursement for extraneous legal research on issues that were neither presented to the court nor meaningfully related to any issue presented to the court, including discovery requests pertaining to plaintiff's chain of title, and that certain work could have been performed by less expensive counsel or a non-attorney. The only possible deficiency in the district court's analysis is a failure to identify item by item the items it disallowed with discrete reasons attached to each item. We do not think this lack of detail warrants remand. See Maljack Productions, Inc. v. Goodtimes Home Video Corp., 81 F.3d 881, 890 (9th Cir.1996) (upholding fee award despite cursory justification because the record was sufficient to review the award). The record here is sufficient for us to review the district court's award of fees. The fee order refers to the affidavits submitted by counsel, and these adequately detail the work done. The order lists specific issues which it found to be unrelated to the case, including whether limited broadcasts constitute a publication. It considers carefully, but rejects, appellants' allegations that Lumiere's counsel were surreptitiously attributing work performed in pursuit of a concurrent California litigation as work performed in this case.
 
 
 23
 Our role is to review for an abuse of discretion, Frank Music Corp., 886 F.2d at 1556, not to review an award with "special scrutiny." See Sealy, Inc. v. Easy Living, Inc., 743 F.2d 1378, 1385 (9th Cir.1984) (reviewing a fee award with special scrutiny because the district court had adopted the findings drafted by the prevailing party wholesale). Frank does not hold otherwise. There, the records submitted were insufficient to allow the district court to make an adequate determination of what work was reasonably done and at what rate. The time sheets had not been kept contemporaneously; estimates of time, after-the-fact, were approximate at best. Frank Music Corp., 886 F.2d at 1557. Here, the records were very detailed--13 pages of single spaced time entries--indicating who performed the services and what each lawyer did, enabling the court to make a careful review. In Frank Music, we remanded so that the court could "substantiate whatever fee it awards." Id. Here, the court has done so. It cites to Frank Music and makes clear it has carefully reviewed the attorney's submissions and although it doesn't note each item it discounts or disallows, it identifies the categories.
 
 
 24
 Both parties request attorney's fees on appeal under 17 U.S.C. § 505.[4] See Maljack Productions, Inc., 81 F.3d at 890. Some of the factors to consider in deciding whether to award fees are: the degree of success obtained on the claim; frivolousness; motivation; objective reasonableness of factual and legal arguments; and the need for compensation and deterrence. Jackson v. Axton, 25 F.3d 884, 890 (9th Cir.1994).
 
 
 25
 Lumiere has obtained total success in defending against appellants' copyright claims in this action. We find that appellants' copyright claims are, if not frivolous, at least factually unsupported. Maljack Productions, Inc., 81 F.3d at 890. An award of fees may deter other such suits. We do not find that appellants were motivated by bad faith in appealing the summary judgment against them; nevertheless all the other factors support an award of fees to Lumiere. We therefore find that Lumiere is entitled to an award of reasonable attorney's fees incurred in defending the copyright claims on appeal.
 
 
 26
 Any application for attorney's fees on appeal and any objections thereto shall be made pursuant to the applicable sections of Circuit Rule 39.1, and shall be referred to the Appellate Commissioner for a recommendation to the panel as to amount.
 
 II. CONCLUSION
 
 27
 We AFFIRM.
 
 SCHWARZER, Senior District Judge, Dissenting:
 
 28
 Being of the view that Frank Music Corp. v. Metro-Goldwyn-Meyer, Inc., 886 F.2d 1545 (9th Cir.1989), requires that we remand for a proper determination of attorneys fees, I respectfully dissent from the affirmance of the fee award.
 
 
 
 **
 Honorable William W. Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 Baker & Taylor was dismissed with prejudice by the district court on June 22, 1994. No one is contesting that ruling. Its request for attorney's fees and costs was denied on September 29, 1994. Although Baker & Taylor filed a notice of appeal, it did not raise the issue in the briefs and we therefore deem it waived. International Union of Bricklayers & Allied Craftsman Local Union No. 20 v. Martin Jaska, Inc., 752 F.2d 1401, 1404 (9th Cir.1985) (matters not raised and argued in appellant's opening brief are not ordinarily considered)
 
 
 [2]
 The titles involved in this case are within the Third and Fourth series and were produced between 1965 and 1968. These are episodes in color, starring Patrick Macnee and Diana Rigg, as well as episodes from the series starring Macnee and Linda Thorsen
 
 
 [3]
 We note that the document is not per se inadmissible. A competent witness with personal knowledge could authenticate the document. Fed.R.Evid. 901(b)(1). If adequately authenticated by the testimony of "the custodian or other qualified witness" it might be admissible under the business records exception to the Hearsay Rule.Fed.R.Evid. 803(6)
 
 
 [4]
 Section 505 provides: "In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs. "